**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | | |
|---|---|---|
| **ROBERT S. GUTIERREZ, JR.,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.** |
| | § | **DR-23-CV-00059-AM-MHW** |
| | § | |
| **ZAVALA COUNTY APPRAISAL** | § | |
| **DISTRICT,** | § | |
|     **Defendant.** | § | |
| | § | |

**<u>REPORT AND RECOMMENDATION</u>**

TO THE HONORABLE ALIA MOSES, CHIEF UNITED STATES DISTRICT JUDGE:

The Court referred the above-captioned matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b).  On January 18, 2024, the Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure (FRCP) 12(b)(6)).  (Motion to Dismiss, ECF No. 14.)  The Plaintiff responded, and the Defendant replied to the Response.  (Resp., ECF No. 20; Reply, ECF No. 21.)  For the following reasons, it is recommended that the Defendant's Motion [ECF No. 14] be **DENIED.**

**<u>I. BACKGROUND</u>**

**A.    Factual Background**

The 12(b)(6) standard requires the Court to take the Plaintiff's factual allegations as true. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  Accordingly, the facts underlying this matter are as follows.

Plaintiff Robert Gutierrez, a 31-year-old, self-identified homosexual male, began working at the Zavala County Appraisal District (ZCAD) on September 8, 2020.  (Pl.'s First Am. Compl., ECF No. 12, at 3.)  Shortly thereafter, the Plaintiff informed his supervisor, Yolanda Lavenant, that he was a homosexual.  (*Id.*)  After this disclosure, Lavenant began directing offensive

remarks about the Plaintiff's sexual orientation towards the Plaintiff in front of his coworkers. (*Id.*)  First, approximately two or three weeks after the Plaintiff started at ZCAD, Lavenant said to the Plaintiff in Spanish "You're such a fag," while in the company truck with other appraisers. (*Id.*)  The other appraisers laughed at this comment.  (*Id.*)  The Plaintiff went the next day to privately speak with Lavenant about the comment, expressing that he found it offensive and inappropriate.  (*Id.*)  Lavenant responded that the comment was a joke.  (*Id.*)  The Plaintiff specifically asked Lavenant to not make similar comments in the future, to which Lavenant responded, "This is my office and [sic] you're not going to tell me what I can and cannot say." (*Id.* at 3–4.)

A few weeks later, Lavenant walked by the Plaintiff as he was eating lunch with a coworker and said "faggot" (hereinafter, the Offensive Language) in Spanish and looked directly at the Plaintiff.  (*Id.* at 4.)  A few other individuals present laughed, while glancing over at the Plaintiff.  (*Id.*)  The Plaintiff went to Lavenant's office again that day to discuss her comments towards him.  (*Id.*)  Lavenant dismissed the Plaintiff's request for her to cease using the Offensive Language by stating, "You're too sensitive, you need get over it [sic]!"  (*Id.* at 4.) Despite the Plaintiff's objection to her comments, Lavenant continued to make multiple, similar disparaging comments towards the Defendant at work throughout 2021.  (*Id.*)

Additionally, Lavenant spoke to every other employee about necessary documentation to receive a raise in October 2021 but did not speak to the Plaintiff about the form.  (*Id.* at 5.) Accordingly, the Plaintiff failed to timely complete the form and received the raise three months later than his coworkers.  (*Id.*)  The Plaintiff did not receive any retrospective payment for those three months.  (*Id.*)  The Plaintiff confronted Lavenant about the delay and how he felt she was

2

treating him unfairly. (*Id.*) Furthermore, in late 2021, Lavenant held a luncheon and invited all the other staff members to the luncheon, openly excluding the Plaintiff from attending. (*Id.*)

Thereafter, in early 2022, the Plaintiff contracted the COVID-19 virus. (*Id.*) Lavenant directed the Plaintiff to stay home for two weeks, against World Health Organization guidelines. (*Id.*) The Plaintiff exhausted all his sick leave and some personal leave during those two weeks. (*Id.* at 6.) He requested ZCAD pay for half of the sick leave and personal leave; Lavenant denied this request. (*Id.*) However, Lavenant allowed a female coworker exposed to the COVID-19 virus to return to work within five days. (*Id.* at 5–6.) Further, while the Plaintiff was on leave due to the virus, Lavenant attempted to instigate a disagreement between the Plaintiff and a coworker based on a lie. *(Id.* at 6.)

Additionally in the beginning of 2022, Lavenant instructed the front office staff to forward all of Plaintiff's mail to her. (*Id.*) Lavenant then kept all the Plaintiff's mail, including documents needed for the Plaintiff to complete his job. (*Id.*) She did not allow Plaintiff access to these documents until shortly before his termination but allowed two of the Plaintiff's coworkers to access the documents. (*Id.*) Moreover, the Plaintiff met with Lavenant on March 2, 2022. (*Id.*) In this meeting, Lavenant made several false statements about the Plaintiff's job performance without any proof of wrongdoing by the Plaintiff. (*Id.*) As the Plaintiff left Lavenant's office, he informed her that the Plaintiff would meet with the Board of Directors if she continued treating him unfairly. (*Id.* at 7.)

On March 3, 2022, when the Plaintiff took a personal day due to the stress caused by Lavenant, he reported to an HR Representative, Marisela Castro, that he felt Lavenant was discriminating against and harassing him due to his sexual orientation. (*Id.*) The Plaintiff then

asked about the procedure for filing a complaint against Lavenant for this discrimination.  (*Id.*)

Castro did not know the procedure and told the Plaintiff she would get back with the Plaintiff.

(*Id.*)  Castro then informed Lavenant about the Plaintiff's complaint but provided no information

to the Plaintiff.  (*Id.*)  Finally, when the Plaintiff returned to work on March 7, 2022, Lavenant

came to the Plaintiff's office door with Alex Silva and stated "Before you start anything, I just

want to let you know that I am firing you because HR told me that you filed a complaint against

me, and I don't trust you anymore! Get your things and leave!"  (*Id.*)  After a short exchange,

Lavenant went to her office, closed the door, and refused to speak with the Plaintiff regarding his

termination.  (*Id.*)

**B.      Procedural Background**

The Plaintiff initiated this matter by filing the original Complaint on November 7, 2023.

(Compl., ECF No. 1.)  The Defendant filed a Motion to Dismiss for Failure to State a Claim on

November 30, 2023.  (Mot. 1, ECF No. 5.)  After the Plaintiff, with leave, filed his First

Amended Complaint, the Court denied the Defendant's first Motion to Dismiss as moot.  (First

Am. Compl., ECF No. 12; Order, ECF No. 11.)  Thereafter, the Defendant filed this present

Motion to Dismiss Plaintiff's First Amended Complaint.  In the First Amended Complaint, the

Plaintiff asserts claims for discrimination based on sexual orientation under Title VII and Texas

Labor Code Chapter 21 and unlawful retaliation.  (First Am. Compl. at 8–10.)  Because the

Plaintiff has responded to the Motion and the Defendant replied to the response, the Motion is

ripe for disposition.

## II.  DISCUSSION

**A.      12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); accord *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of . . . entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations, quotations, and alterations omitted); accord *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  That is, there must be "a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Id.* at 555 n.3 (quoting Fed. R. Civ. P. 8(a)(2)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quotation omitted); accord *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Therefore, the complaint must be liberally construed in the plaintiff's favor, all reasonable inferences must be drawn in favor of the plaintiff's claims, and the factual allegations of the complaint must be taken as true. *See Campbell*, 781 F.2d at 442.

**B.    Analysis**

**i.    Discrimination**

"Title VII of the Civil Rights Act of 1964 prohibits employers from 'discriminating' against any individual with respect to employment 'because of such individual's . . . sex." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 598 (5th Cir. 2021); 42 U.S.C. § 2000e-2(a)(1). Discrimination based on sexual orientation is discrimination based on sex. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1743 (2020). Similarly, Chapter 21 of the Texas Labor Code prohibits unlawful discrimination in employment. Under the Texas Labor Code, "an employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." Tex. Lab. Code § 21.051(1). Interpretation of Title VII guides the interpretation of Chapter 21. *Quantum Chem. Corps. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Therefore, the same analysis applies to claims under both provisions. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).

"Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's [protected trait]." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). These claims can be shown by direct or circumstantial evidence. *Id.* When a plaintiff relies on circumstantial evidence, the familiar *McDonnell Douglas* framework applies. *Id.* However, to survive a 12(b)(6) motion, a plaintiff does not have to set out a prima facie case of discrimination under *McDonnell Douglas*. *Swierjiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–11 (2002); *Cicalese*, 924 F.3d at 766. Instead, a Plaintiff "must plead sufficient facts on all of the ultimate elements of a disparate treatment claim." *Cicalese*, 924 F.3d at 766 (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *McLin v. Twenty First Jud. Dis.*, 79 F.4th 411, 417 (5th Cir. 2023). Those two ultimate elements are "(1) an 'adverse employment action,' (2) taken against a plaintiff 'because of [his] protected status.'" *Cicalese*, 924 F.3d at 767 (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *McLin*, 78 F.4th at 417.

In his First Amended Complaint, the Plaintiff alleges that, during his less-than-two-year career at ZCAD, his direct supervisor, Lavenant, referred to him as a "fag" or "faggot" in Spanish at least twice in front of coworkers, despite his requests for her to cease doing so. (Pl.'s First Am. Compl. at 3.) Additionally, the Plaintiff alleges that Lavenant did not provide him with the same guidance she provided to other employees, causing him to lose three months of a raise. (*Id.* at 5.) Further, he alleges Lavenant excluded him from work activities, handled his COVID-19 leave differently than that of other employees, purposely withheld information needed for the Plaintiff's job, and falsely accused him of misconduct, all on account of his homosexuality. (*Id.* at 5–7.) All of this culminated in Lavenant's removal of the Plaintiff. (*Id.*

7

at 7.)  Taking all of this as true, as the undersigned must, the Plaintiff has sufficiently pleaded that an adverse employment action occurred because of his sex.

In its Motion, the Defendant asserts two main arguments related to the Plaintiff's discrimination claims.  First, the Defendant argues that the Court should follow the *McDonnell Douglas* framework because the Plaintiff has not presented any direct evidence of discrimination.  (Mot. at 5–7.)  Second, the Defendant asserts that the Plaintiff's claim must fail because he has failed to allege a comparator whom the Defendant treated more favorably.  (*Id.* at 8–10.)  The first argument does not require the granting of the Defendant's Motion.  As stated above, at the 12(b)(6) stage, the Court should not require the Plaintiff to prove the *McDonnell Douglas* prima face case.  *Swierjiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–11 (2002); *Cicalese*, 924 F.3d at 766.  Additionally, deciding whether the Plaintiff can produce direct evidence is not appropriate at this stage of the proceedings.  *See Stone v. La. Dep't of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014) (per curiam).  As to the Defendant's second argument, an in-depth analysis of the propriety of a comparator is more appropriate at the summary judgment stage of a proceeding.  *Olivarez*, 997 F.3d at 601; *Cicalese*, 924 F.3d at 768.  In the cases in which a court dismissed a case under 12(b)(6) due to the lack of an alleged more favorably treated comparator, the plaintiff failed to allege any other facts that would "nudge the claims across the line from conceivable to plausible."  *See e.g.*, *Olivarez*, 997 F.3d at 600; *Chhim v. Uni. Of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016) (per curiam); *Angus v. Mayorkas*, No. 22-50600, 2023 U.S. App. LEXIS 14506, at *15–16 (5th Cir., June 9, 2023) (unpublished).  However, based on the above analysis, the Plaintiff here has pleaded a plausible discrimination claim.  Accordingly, the Defendant's arguments cannot prevail at this juncture.

### ii.        Hostile Work Environment

The Plaintiff's allegations of a hostile work environment also survive the 12(b)(6) standard.   "Hostile work environment is a specific discrimination claim under Title VII." *Hudson v. Lincare*, *Inc.*, 58 F.4th 222, 229 (5th Cir. 2023).

> To state a claim for harassment based on a hostile work environment theory, a plaintiff must allege . . . that [he] was harassed because of [his sex], affecting a condition or privilege of [his] employment.  To affect a condition or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

*Stone*, 590 F. App'x at 340 (internal quotations omitted).

Courts have found that directing slurs or other highly offensive language at a plaintiff, especially in context of other unfair conduct, is sufficient to allege a hostile work environment. *Johnson v. PRIDE Indus.*, 7 F.4th 392, 403–04 (5th Cir. 2021) (held the use of a racial epithet combined with the withholding of important documents and assigning the plaintiff to less favorable work survived a motion for summary judgment); *Goings v. Lopinto*, No. 22-2549, 2023 U.S. Dist. LEXIS 54658, at *12–13 (E.D. La., Mar. 30, 2023) (holding the use of derogatory language regarding homosexuals, denying promotions, changing shifts, and falsified reprimands sufficient to state a hostile work environment claim).  Indeed, the use of the same Offensive Language by a supervisor alleged here, especially in light of other conduct, has been found sufficient to create a hostile work environment: the Offensive Language "is so replete with homophobic animus that, if used, instantly separates an individual who identifies as gay from

9

everyone else in the workplace." *Hawkins v. City of Philadelphia*, 571 F. Supp. 3d 455, 464 (E.D. Pa. 2021).

Here, the Plaintiff alleges that his supervisor referred to him with the Offensive Language in front of other employees at least twice and made other disparaging comments about the Plaintiff through 2021. (First Am. Compl. at 3–4.) Additionally, Lavenant excluded the Plaintiff from work functions, treated him differently regarding leave, failed to guide him in acquiring the same raise as other employees, made false accusations against the Plaintiff, and withheld documents needed for the Plaintiff to complete his job. (*Id.* at 4–7.) The treatment Plaintiff experienced at work led to his need to take a personal day. (*Id.* at 7.) This is sufficient to state a claim for hostile work environment due to the Plaintiff's sexual orientation.

### iii.    Retaliation

Finally, the Plaintiff's claim for unlawful retaliation should survive. It is unclear whether the Plaintiff pleads a claim for unlawful retaliation solely under Chapter 21 of the Texas Labor Code or if he pursues this claim under Title VII, as well. (First Am. Compl. at 9.) However, the Parties appear to be addressing this issue as a claim under Title VII, as well. Regardless, because Title VII and Chapter 21 claims use identical analyses, the undersigned will refer to authority pertaining to Title VII. *Quantum Chem. Corps.*, 47 S.W.3d at 474; *Gorman*, 753 F.3d at 170.

"To state a claim for retaliation in violation of Title VII, the plaintiff must allege that [his] employer took an adverse employment action against [him] in retaliation for engaging in protected conduct." *Stone*, 590 F. App'x at 341 (citing *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002)). The Plaintiff alleges that he "reported to HR representative Castro that he felt he was being discriminated and harassed because of his sexual orientation"

10

and "inquired about the procedure for filing a complaint against Lavenant." (First Am. Compl. at 7.) The HR representative then informed Lavenant about this complaint. (*Id.*) When the Plaintiff returned to work four days later, Lavenant told the Plaintiff, "Before you start anything, I just want to let you know that I'm firing you because HR told me you filed a complaint against me, and I don't trust you anymore! Get your things and leave!" (*Id.*) The Plaintiff alleges he was fired shortly after his conversation with HR about alleged discrimination against him for having said conversation with HR, and that Lavenant directly stated as much. Accordingly, the Plaintiff states a sufficient claim for unlawful retaliation.

The Defendant argues that the Plaintiff's conversation with HR was not a protected complaint because it was informal and was not about sexual orientation. (Mot. at 11.) However, even informal opposition to an unlawful employment practice can constitute protected activity. *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 649 (W.D. Tex. 2014). "To show that the activity was protected, the employee must have had 'at least a reasonable belief that the practices [he] opposed were unlawful.'" *Id.* at 648 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). Based on the foregoing analyses and the Plaintiff's pleading, the Plaintiff reasonably believed he was being discriminated against based on his sexual orientation. Additionally, the Plaintiff directly alleges that he informed HR "that he felt he was being discriminated and harassed because of his sexual orientation." (First Am. Compl. at 7.) Therefore, this is more than a generalized complaint about his employment, as asserted by the Defendant. Therefore, these arguments fail.

### III.  CONCLUSION & NOTICE

For the reasons set forth in this Report and Recommendation, it is **RECOMMENDED** that the Defendant's Motion to Dismiss [ECF No. 14] be **DENIED.**

The parties may wish to file objections to the above recommendations.  Failure to file written objections to the findings and recommendations contained in this Report and Recommendation within **fourteen (14)** days from the date of its receipt shall bar an aggrieved party from receiving *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. 636(b)(1)(C), and shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  This Report and Recommendation does not dispose of all issues and controversies referred to the undersigned in the above-captioned cause.

**SIGNED** this 28th day of May, 2024.

_____
MATTHEW H. WATTERS
UNITED STATES MAGISTRATE JUDGE

12